UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80275-CIV-MARRA/JOHNSON

GERARD L. CAFESJIAN and THE
CAFESJIAN FAMILY FOUNDATION, INC.,

      Plaintiffs,

vs.

THE ARMENIAN ASSEMBLY OF
AMERICA, INC., HIRAIR HOVNANIAN,
and VAN KRIKORIAN

      Defendants.
_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Defendants The Armenian Assembly of

American, Inc. ("The Assembly"), Hirair Hovnanian ("Hovnanian"), and Van Krikorian's

("Krikorian") (collectively referred to as "Defendants") Motion to Dismiss DE 7. The matter is

now fully briefed and ripe for review. The Court has carefully considered the motion and is

otherwise fully advised in the premises.

### I.  Background

This matter arises out of a Complaint filed by Plaintiffs Gerald Cafesjian ("Cafesjian")

and The Cafesjian Family Foundation, Inc. ("The Foundation") (collectively referred to as

"Plaintiffs") in state court on January 11, 2011 ("The Complaint"). The facts are taken from

Plaintiffs' Complaint and are assumed true for the purposes of Defendants' Motion to Dismiss.

In 1997, the Assembly began soliciting money from Cafesjian and, in August 1998,

Cafesjian donated $25,000 to the Assembly to receive the title of "Trustee." Complaint at ¶ 10,

13.  In early 1999, Hovanian "represented to Mr. Cafesjian that the payment of a significant amount of funds to the Assembly would entitle Mr. Cafesjian to participate, in a substantial and permanent fashion, in the affairs of the Assembly."  Complaint at ¶ 15.  Based on these representations, Mr. Cafesjian pledged the sum of $1,050,000 to the Assembly.  Complaint at ¶ 16.

In April 1999 Hovnanian wrote a letter to Cafesjian in which Hovnanian noted Cafesjian's "very special commitment to the future of the assembly" and referred to him as being "a very special friend of the assembly."  Complaint at ¶ 18.  Shortly thereafter, Cafesjian, through the Foundation, made three payments of $350,000 over the course of three years.  Complaint at ¶ 20.  Cafesjian "requested, and received membership in the two most important organizations within the Assembly, the 'Executive Committee' and the 'Consultative Group.'  In addition, Mr. Cafesjian requested and received an appointment as Vice President of the Assembly, as well as membership on the Assembly's Board of Directors."  Complaint at ¶ 21.  The Assembly continued to allow Cafesjian's involvement through the latter portion of 2005.  Complaint at ¶ 22.

In 2006, as a result of a personal dispute between Cafesjian and Hovnanian, the latter "began taking steps to prevent Cafesjian from participating in the affairs of the Assembly."  Complaint at ¶ 22.  On January 12, 2007, Krikorian and Hovnanian "engineer[ed] a vote to suspend Mr. Cafesjian from the Assembly Board of Trustees based on an unfounded allegation of 'conflict of interest.' "  Complaint at ¶ 24.  At that same meeting, the Assembly Board of Trustees voted to suspend Mr. Cafesjian, which prevented Cafesjian from having any involvement in the operations of the Assembly.  Complaint at ¶ 25.  The Assembly also ceased inviting Mr. Cafesjian to annual Board of Trustee meetings, despite his status as a Life Trustee.

Complaint at ¶ 25.  The Complaint notes that Krikorian was "complicit and instrumental in Mr. Hovnanian's attempt to prevent Mr. Cafesjian from participating in the affairs of the Assembly." Complaint at ¶ 25.

In the Complaint, Plaintiffs asserts that the Assembly is liable for (1) Breach of Contract - The Agreement (Count I); (2) Breach of Implied Contract: Quantum Meruit (Count II); and (3) Unjust Enrichment (Count III).  The Complaint further alleges that Hovnanian and Krikorian are liable for Tortious Interference with Contract (Count IV).  The Complaint was filed on January 11, 2011 (DE 1).

## II.  Legal Standard

For a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III.  Discussion

Defendants now seek to dismiss Plaintiff's Complaint for six different reasons: (1) the Statute of Limitations bars this suit; (2) the oral contract violates the Statute of Frauds, and therefore Counts I and II should be dismissed; (3) Counts I and II fail to establish the existence of a contract; (4) Counts II and III fail to establish Defendants should have expected compensation or have been unjustly enriched; (5) Count IV fails to state of a cause of action for tortious interference; and (6) the Complaint is barred by principles of *res judicata* and collateral estoppel. Each reason will be addressed in turn.

*1.  Statute of Limitations*

Defendants first assert that the entire action should be dismissed because it is barred by the governing statute of limitations.  Florida law precludes a plaintiff from bringing suit on an oral contract after four years from the date the cause of action accrued.  See Fla. Stat. § 95.11(3)(k).  The time begins to run once "the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).  Here, the parties agree that the last element in a cause of action based on a breach of contract is the specific event that constitutes a breach.  Where the parties disagree, however, is which event constitutes a breach of the alleged oral contract.  Specifically, Defendants assert that the breach occurred when Hovnanian and Krikorian began taking steps to alienate Cafesjian, whereas Plaintiffs assert that the breach took place at the January 17, 2007,

meeting in which Cafesjian was officially suspended from the Assembly's board.

Defendants rely on Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288 (Fla. 3d DCA 2007), to support the proposition that "[t]he limitations period does not begin to run at the time of the last breaching action, but rather, at the time of the first act of a breach." Reply at 2. Although Defendants may be correct in that the time begins to run when the contract is first breached, their argument is still premised on the assumption that the conduct upon which they rely was an actual breach. Although the Complaint alleges that Hovnanian and Krikorian took steps to undermine the alleged oral contract between the Assembly and Cafesjian, nothing on the face of the Complaint definitively states that Cafesjian's rights under the alleged contract were actually breached at that time. To the contrary, viewing the facts in a light most favorable to the Plaintiff, Hovnanian and Krikorian's actions were simply an anticipatory breach. At least one Florida court has held that if a party faced with an anticipatory breach elects not to act on that repudiation, the statute of limitations does not begin to run until the contract is actually breached. See Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 575-77 (Fla. 4th DCA 2006). Regardless, the question of whether Hovnanian and Krikorian's conduct in 2006 constitutes an actual breach is a question of fact, allowing the claims to survive dismissal on this issue.

*2. Statute of Frauds*

Defendants next assert that Counts I and II should be dismissed because the oral contract is unenforceable pursuant to the Statute of Frauds. The parties agree that the Statute of Frauds does not bar an oral contract intended to last for the lifetime of one of the parties. Defendants assert, for the first time in their Reply Brief, that the agreement in question "included a pledge to pay three installments over the course of 21 months." Reply at 3 (citing Complaint at ¶ 20).

Paragraph 20 of the Complaint, however, does not support Defendants' assertion.  That

paragraph, in its entirety, provides:

> Mr. Cafesjian funded his pledge through three payments of $350,000 each.  Those
> payments were made on April 19, 1999, January 4, 2000, and January 1, 2011.
> The payments were made by the Foundation at the request and direction of Mr.
> Cafesjian.  The Foundation is a private foundation established and funded by Mr.
> Cafesjian.

Although paragraph 20 of the Complaint asserts that Cafesjian did in fact pay $1,050,000

over the course of 21 months, nothing in that paragraph, or anywhere else in the Complaint,

provides that payment in installments over that time period was part of the oral contract.  The

question of whether payment in installments was part of the agreement is a question of fact that

the Court will not decide at this stage of the proceedings.

*3.  Existence of a Contract*

Next, Defendants assert that the Complaint fails to establish the existence of a contract,

and thus Counts I and II should be dismissed.  In their Motion to Dismiss, Defendants first rely

on Brown v. Brown, 501 So. 2d 24 (Fla. 5th DCA 1986), to support the proposition that promises

to make a gift do not constitute a binding contract.  In Brown, the Fifth District Court of Appeal

held that "love and affection" is not sufficient consideration to establish the existence of a

binding contract.  See Brown, 501 So. 2d at 27.  Here, the Complaint clearly alleges that "[t]he

Agreement consisted of Mr. Cafesjian agreeing to pay $1,050,000 to the Assembly in exchange

for the Assembly giving Mr. Cafesjian the right to participate, in a substantial and permanent

fashion, in the affairs of the Assembly."  Complaint at ¶ 30.  The question of whether such

involvement constitutes sufficient consideration to establish the existence of a legally binding

agreement is a question of fact that the Court will not address here.

Defendants, relying on DeMarco v. Publix Super Markets, Inc., 360 So. 2d 134 (Fla. 3d

DCA 1978), also assert that a breach of contract claim may not be brought on a contract that is not of definite duration.  That proposition, however, is simply not supported by DeMarco.  In that decision, the Third District Court of Appeal provided:

> The established law is that where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract. Wynne v. Ludman Corporation, 79 So. 2d 690 (Fla.1955); Sher v. Shower Door Company of America, 197 So. 2d 333 (Fla.3d DCA 1967); Critchlow v. WFC Mortgage Company, Inc., 315 So. 2d 483 (Fla. 3d DCA 1975).  The employment agreement in the case at bar having been for an indefinite time, Publix could terminate DeMarco for any reason without incurring liability.  Thus, Publix was not liable for firing him for the reason that he was exercising his constitutionally protected rights.

DeMarco, 360 So. 2d 136.  This decision was rendered in the context of an employee at will.  It is a question of fact whether the contract in question was one of employment.  Moreover, the Complaint alleges an agreement for a definite duration: the life of Mr. Cafesjian.

Finally, again for the first time in their Reply Brief, Defendants assert that the Complaint fails to establish a "meeting of the minds."  As articulated above, the Complaint alleges that Cafesjian was promised "the right to participate, in a substantial and permanent fashion, in the affairs of the Assembly" in exchange for his donation.  Complaint at ¶ 30.  To the extent Defendants assert a contrary understanding, and thus a failure of a "meeting of the minds" this also presents a question of fact that is not appropriate for resolution at this stage of the proceedings.

Plaintiffs have adequately pled the existence of a legitimate, binding contract.  Accordingly, dismissal is not warranted based on Defendant's third claim.

*4.  Quantum Meruit & Unjust Enrichment*

Defendants next assert that Plaintiffs' claim for quantum meruit and unjust enrichment should be dismissed for failing to establish that Defendants should have expected compensation

or have been unjustly enriched.  Through their Motion to Dismiss, Defendants state:

> Here, it certainly cannot be said that Cafesjian's role on the Assembly's Board
> provided him with a right to compensation, nor do Plaintiffs make such an
> assertion in the Complaint.  What Plaintiffs seem to allege is that the
> "compensation" expected was in the form of participation in the Assembly's
> affairs.  Even if the Court entertains Plaintiffs' assertions, Cafesjian in fact
> enjoyed roughly seven years of participation as a Board member and continues as
> a Life Trustee.  Thus, arguably, Cafesjian was "compensated" for his donation.

Motion to Dismiss at 9.  Defendants' argument does not defeat Plaintiff's claim.  Plaintiff has

adequately asserted that he provided a substantial benefit upon the Assembly by virtue of his

donations, which has been retained by the Assembly, but that he has failed to receive back that to

which he is entitled.  Whether that which Plaintiff did receive in exchange for his donations is or

is not adequate is a question of fact.

Defendants further assert, without providing any authority, that "a charitable donation

necessarily enriches one party."  Motion to Dismiss at 9.  The only support for this proposition is

a statement that "Plaintiffs [ ] necessarily received a tax benefit for the donation in addition to

Cafesjian's status as a trustee."  Id.  This argument is without merit for four reasons.  First, the

question of whether the donation was a "charitable donation" or a payment in exchange for

valuable consideration is also a question of fact that will not be decided here.  Second, nothing

on the face of the Complaint alleges that the donation was a charitable donation that was made

for tax purposes.  Third, any tax benefit that may or may not have been received could only be

revealed by reviewing information outside the Complaint, something not appropriate for a

motion to dismiss.  See Sampson v. Washington Mut. Bank, 2011 WL 4584780, *2 (11th Cir.

2011).  Fourth, even if Cafesjian received a tax benefit for his donation, Defendants fail to

provide any authority that holds such a benefit precludes the donor from establishing a

subsequent claim for unjust enrichment.  Accordingly, dismissal is not warranted on this claim.

5. *Tortious Interference*

Count IV is a claim for tortious interference against Hovnanian and Krikorian.  The essential elements of a claim for tortious interference in Florida are: "(1) the existence of a business relationship not necessarily evidenced by an enforceable contract under which the plaintiff has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." Realauction.com, LLC v. Grant Street Group, Inc., 2011 WL 517004, *2 (Fla. 4th DCA Nov. 2 2011) (citing Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385 (Fla. 4th DCA 1999)).

Defendants seek to dismiss Plaintiffs' claim for tortious interference for two reasons.  First, relying on previously asserted arguments, Defendants again allege that Plaintiff has failed to establish the existence of a legally binding contract.  As discussed previously, the question of whether the agreement between Cafesjian and the Assembly did, in fact, constitute a valid contract is one of fact that the Court will not address at this stage of the proceedings.  Plaintiff has alleged sufficient facts which, if true, state the existence of a binding contract.

Second, Defendants rely on Ethyl Corp. v. Balter, 386 So. 2d 1220, 1223 (Fla. 3d DCA 1980), to support the proposition that one cannot tortiously interfere with a contract among and between oneself.  Even if true, Plaintiffs correctly note that the Complaint alleges a contract between Cafesjian and the Assembly, not between Cafesjian, on the one hand, and Hovnanian and Krikorian on the other.  Complaint at ¶ 29.  Accordingly, Plaintiffs have adequately pled a claim for tortious interference.

*6. Res Judicata and Collateral Estoppel*

Finally, Defendants assert that the Complaint is barred by principles of *res judicata* and collateral estoppel.  In support of this claim, Defendants rely on a decision from another district court.  *Res Judicata* and collateral estoppel are affirmative defenses and should not be considered on a motion to dismiss since it requires consideration of matters outside of the complaint.  Moch v. East Baton Rouge Parish School Board, 548 F.2d 594, 596 n.3 (5th Cir. 1977).  Otherwise, the court must treat the motion to dismiss as a motion for summary judgment and give appropriate notice to the parties.  Fed. R. Civ. P. 12(d).  This Court will not consider the ruling from another court at this time, and therefore consideration of these defenses is premature.

### III.  Conclusion

For all the aforementioned reasons, Defendants' Motion to Dismiss is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of December, 2011.

_____
KENNETH A. MARRA
United States District Judge